NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| INDUSTRIAL TECHNOLOGY RESEARCH INSTITUTE,<br><br>    Plaintiff,<br><br>v.<br><br>LG CORPORATION, et al.,<br>    Defendants. | Civil Action No. 12-929 (JLL)<br><br>**OPINION** |

**LINARES,** District Judge**.**

This matter comes before the Court by way of Plaintiff's motion to dismiss Defendants' Fourth Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike Defendants' Eleventh Affirmative Defense pursuant to Federal Rule of Civil Procedure 12(f) [Docket entry No. 159]. The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Plaintiff's motion is **denied.**

**BACKGROUND**[1]

Plaintiff, Industrial Technology Research Institute ("ITRI"), commenced the instant cause of action in November 2010 in the Eastern District of Texas. Plaintiff, a scientific research institution based in Taiwan, alleges patent infringement claims against various LG entities. In

---

[1] The Court accepts the following facts as true solely for purposes of the instant motion.

particular, Count One of Plaintiff's Complaint alleges that Defendants infringe U.S. Patent No. 6,349,761, titled "Fin-Tube Heat Exchanger With Vortex Generator," (hereinafter "the '761 patent"). The '761 Patent relates generally to air conditioners.

The case was transferred to this Court in February 2012. This Court's jurisdiction is premised on 28 U.S.C. §§ 1331 and 1338(a).

In January 2012, Defendants filed an Amended Answer, asserting an affirmative defense and counterclaim based on inequitable conduct [Docket Entry No. 107]. Generally, the Eleventh Affirmative Defense alleges that "despite acknowledging his duty of good faith and candor, Mr. Wang withheld the Wang Article, a material reference, with the intent to deceive the U.S. Patent and Trademark Office" and that Mr. Wang's failure to disclose the Wang Article, combined with his intent to deceive the U.S. Patent and Trademark Office, renders the '761 Patent unenforceable. (Answer at ¶¶ 44-45). In particular, the Eleventh Affirmative Defense alleges the following:

- Chi-Chuan Wang, an inventor of the '761 Patent, authored and was aware of a journal article, Technology Review – A Survey of Recent Patents of Fin-and-Tube Heat Exchangers (hereinafter "the Wang Article") (Answer at ¶ 34).

- Mr. Wang, being skilled in the design and operation of fin-and-tube heat exchangers, would have recognized that the patents and heat exchanger structures disclosed in the Wang Article would have been material to the patentability of one or more claims of the '761 Patent and not cumulative of any other information considered by the U.S. Patent and Trademark Office ("PTO") during the prosecution of the '761 Patent. (*Id*. at ¶ 41)

- On November 1, 2011 and in response to an Office Action from the PTO, an attorney, on behalf of Mr. Wang and the other inventors, amended claim 1 to recite "each of the protuberance ribs having an arcuate contour in a plane normal to the respective heat transfer tube, the plurality of arcuate protuberance ribs together forming a circular pattern concentrically spaced from the respective heat transfer tube." The attorney also argued that the applied reference "fail[ed] to disclose protuberance ribs having an arcuate contour in a plane normal to the respective heat transfer tube, which plurality of protuberance ribs together form a circular pattern." However, the shape and layout of this structure of the claimed invention were known in the art and were known to the Applicants, as shown in the Wang Article and its exemplary teachings. (*Id*. at ¶42).

- Mr. Wang did not disclose the Wang Article during the prosecution of the '761 Patent, even though he claimed the concept of showing protuberance ribs together forming a circular pattern as in claim 1 was new and nonobvious. The teachings of the Wang Article, either alone or in combination with other reference of record, would render at least claims 1, 2, and 3 of the '761 Patent obvious. (*Id.* at ¶ 43).

Defendants' Fourth Counterclaim similarly seeks a declaration that the '761 Patent is unenforceable due to Mr. Wang's inequitable conduct.  In particular, the Fourth Counterclaim alleges that: (1) Mr. Wang and/or his representatives knew of the Wang Article and the Tanaka Patent, both of which are material and not cumulative of the information considered by the PTO

3

during the prosecution of the '761 Patent, and (2) Mr. Wang and/or his representatives failed to disclose these material references to the PTO with the intent to deceive.

Thus, at issue in this motion is Defendants' claim that the '761 Patent is unenforceable due to inequitable conduct by the Plaintiff in the form of a material false representation or omission before the United States Patent and Trademark Office ("PTO"). Plaintiff now argues that all counterclaims and/or affirmative defenses based on such inequitable conduct should be dismissed and/or stricken because the allegations upon which they are based fail to meet the pleading standard of Federal Rule of Civil Procedure 9(b), as interpreted by the Federal Circuit in *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009).

## LEGAL STANDARD

Rule 12(f) of the Federal Rules of Civil Procedure provides: "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A motion to strike an affirmative defense pursuant to 12(f) is governed by the same standards as a motion to dismiss pursuant to 12(b)(6). *See In re Gabapentin Patent Litig.*, 648 F. Supp. 2d 641, 647–48 (D.N.J. 2009) ("Because a motion [to strike] challenges the legal sufficiency of the pleading, it is governed by the same standards as a motion to dismiss . . . . An affirmative defense is insufficient as a matter of law if it cannot succeed under any circumstances."). In this district, motions to strike "are generally viewed with disfavor and will generally be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties or if the allegations confuse the issue." *Garlenger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002). In this regard, the Third Circuit has cautioned that courts "should not grant a motion to strike a defense unless the insufficiency

4

of the defense is 'clearly apparent.' " *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir. 1986).

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at 1949. Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truth. *Id.* at 1940; *In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 565 (D.N.J. 2001). With this framework in mind, the Court turns now to Plaintiff's motion.

## ANALYSIS

Plaintiff now moves to dismiss Defendants' Fourth Counterclaim and to strike Defendants' Eleventh Affirmative Defense on the basis that Defendants have "failed to show that Mr. Wang had actual knowledge of any of the allegedly material information contained in either reference" at the point in time when he could have disclosed it to the PTO (Pl. Br. at 2, 7). According to Plaintiff, Defendants' allegation that Mr. Chan "would have recognized" the materiality of the two references that were not disclosed to the PTO is insufficient to show that Mr. Wang actually knew of specific material information contained therein. According to

5

Plaintiff, "this lack of knowledge renders it impossible for the Court to reasonably infer that Mr. Wang's failure to disclose these references shows a specific intent to deceive the PTO." (*Id.*).

Generally speaking, "a patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the PTO during prosecution." *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006). In this regard, the party asserting inequitable conduct must ultimately "prove a threshold level of materiality and intent by clear and convincing evidence." *Id.* Although such a showing is clearly not required at the pleading stage, the Federal Circuit has held that inequitable conduct is analogous to fraud, which, under Federal Rule of Civil Procedure 9(b), must be pled with particularity. *See Exergen,* 575 F.3d at 1326. The *Exergen* court summarized the applicable pleading standard for inequitable conduct as follows:

> In sum, to plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Exergen,* 575 F.3d at 1328–29.

The Court has carefully reviewed Defendants' Answer and, based on the reasons that follow, finds that Defendants have alleged sufficient facts from which the Court may "reasonably infer" that a particular inventor, Mr. Wang, both knew of invalidating information that was withheld from the PTO—the entirety of the Wang Article, including its discussion of the Tanaka

Patent—and withheld such information with the intent to deceive the PTO. *See generally Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011).

First, Defendants have alleged the "who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen,* 575 F.3d at 1328–29. In particular, Defendants' pleading alleges that: (1) the '761 Patent stated "[t]he design of the first embodiment of the present invention is quite different from the traditional louver or slit fin, because the traditional structure promotes the heat transfer efficiency by damaging the heat boundary layer which causes a drawback of increasing the pressure drop significantly," (2) on November 1, 2011, an attorney acting on behalf of Mr. Wang amended claim 1 of the '761 Patent to recite "each of the protuberance ribs having an arcuate contour in a plane normal to the respective heat transfer tube, the plurality of arcuate protuberance ribs together forming a circular pattern concentrically spaced from the respective heat transfer tube," (3) that said attorney argued that the applied reference "fail[ed] to disclose protuberance ribs having an arcuate contour in a plane normal to the respective heat transfer tube, which plurality of protuberance ribs together form a circular pattern," and (4) that the shape and layout of the structure of the claimed invention were known in the art and were known to Mr. Wang, in particular, by virtue of the fact that an article he had previously authored (the Wang Article) contained a discussion of the Tanaka Patent which, according to Defendants' interpretation, included the limitations found missing from the cited prior art. Based on these factual allegations, the Court finds that Defendants have sufficiently pled the "circumstances" of inequitable conduct with the requisite level of particularity. *See Exergen,* 575 F.3d at 1328–29.

Second, although the Court agrees that the specific theory underlying the intent to deceive element could have been more fleshed out in Defendants' pleading, the Court finds that

Defendants have alleged sufficient facts from which a reasonable juror *could* infer that Mr. Wang acted with the requisite state of mind. *See Exergen*, 575 F.3d at 1327. As previously stated, Defendants' Eleventh Affirmative Defense alleges that that the shape and layout of the structure of the claimed invention were known in the art and were known to Mr. Wang, in particular, by virtue of the fact that an article he previously authored (the Wang Article) contained a discussion of the Tanaka Patent which, according to Defendants' interpretation, included the limitations found missing from the cited prior art. (Answer, ¶¶ 55, 56). The Eleventh Affirmative Defense also alleges, by way of example that "the vortex generators discussed in the background are the same prior art structures disclosed in the Wang Article as vortex generators. While the Applicants made the [PTO] aware of these structures, they did not disclose the known structures illustrated in the Wang Article having the shape and/or layouts that the Applicants argued constitute an improvement to the prior art." (Answer, ¶ 44). Defendants' pleading goes on to allege that "Mr. Wang, being skilled in the design and operation of fin-and-tube heat exchanges, would have recognized that the patents and heat exchanger structures disclosed in the Wang Article would have been material to the patentability of one or more claims of the '761 patent." (*Id.*, ¶ 54). Defendants' brief in opposition to Plaintiff's motion to dismiss elaborates on the theory underlying the intent to deceive element by stating that Mr. Wang's selective disclosure of structures discussed in his own article (the Wang Article), while withholding the entirety of the article itself (which included a discussion of the Tanaka Patent) could lead a reasonable juror to infer that Wang acted with the requisite state of mind. Having carefully considered this argument, in conjunction with the factual allegations set forth in Defendants' pleading, this Court agrees. *See Exergen*, 575 F.3d at 1327.

8

Lastly, the Court finds that the arguments raised by Plaintiff concerning the degree of the materiality of the Wang Article (and the contents thereof), the extent of Mr. Wang's knowledge of the materiality of same, as well as the alleged temporal flaw in the substance of Defendants' overarching theory of inequitable conduct,[2] are more appropriately considered on a more developed record. *See, e.g., Mars Inc. v. JCM American Corp.*, No. 05-3165, 2006 WL 1704469, at *8-9 (D.N.J. June 14, 2006) (denying plaintiff's motion to strike defendant's inequitable conduct defense, noting that defendant's arguments "would be more appropriately raised in summary judgment motions or at trial," and reiterating that it will ultimately be "defendants' burden to establish by clear and convincing evidence the materiality and intent elements of a successful inequitable conduct claim.").

## CONCLUSION

In light of the foregoing, Plaintiff's motion to dismiss Defendants' Fourth Counterclaim and to strike their Eleventh Affirmative Defense is **denied.**

An appropriate Order accompanies this Opinion.

DATED: September 25, 2012    s/ Jose L. Linares
                              Jose L. Linares
                              United States District Judge

---

[2] In particular, Plaintiff argues that: (1) according to Defendants, the Wang Article and Tanaka Patent were not material until after claim 1 was amended—on November 2, 2001, (2) Defendants have failed to allege that Mr. Wang knew of this amendment to claim 1, and (3) absent this knowledge, Mr. Wang would not have recognized that the Wang Article or the Tanka Patent were material to the patentability of claim 1 of the '761 Patent. (Pl. Br. at 7).